**[Cite as *State v. Crews*, 2012-Ohio-4854.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24834 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-3595 |
| v. | : | |
| | : | |
| GARY L. CREWS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 19th day of October, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KRISTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

KRISTOPHER A. HAINES, Atty. Reg. #0080558, Ohio Public Defender's Office, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Gary Crews appeals from his conviction and sentence for Felonious Assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree. Crews first contends that the trial court erred when it ordered his defense counsel to disclose a report prepared by Crews's criminal investigator. Crews contends that the investigator's report is non-discoverable work

product under Crim.R. 16(J). We disagree. Crews also contends that the investigator's report should have been excluded as information tending to incriminate him, under Crim.R. 16(H)(3). We agree.

{¶ 2} Crews next contends that the trial court erred when it imposed court costs without notifying him that a failure to pay these court costs could result in a court order to perform community service. The State confesses error in this regard, and we agree.

{¶ 3} Finally, Crews contends that his trial counsel was ineffective in failing to request a waiver of court costs. Because we are reversing Crews's conviction because of the Crim.R. 16(H)(3) violation, this argument is moot. If Crews is convicted on remand, he may request a waiver of court costs.

{¶ 4} The judgment of the trial court is Reversed, and this cause is Remanded for a new trial.

## I. Gary Crews's Altercation with Amanda Hatfield

{¶ 5} Amanda Hatfield and Gary Crews met and began to date in 2010. The couple had plans to renovate an apartment, and eventually move into it, through a program run by a local homeless shelter. They broke up before this plan reached fruition. After the couple's estrangement, Hatfield dated Ed Conley. At this time, Crews was staying with mutual friends, Isaac Black and Cindy Dant.

{¶ 6} Hatfield and Crews met again at Black and Dant's residence, during a party at Black and Dant's apartment complex. Crews and Hatfield left the living room, and met privately in another room to discuss their relationship. During this discussion, Hatfield revealed to Crews that she had slept with Ed Conley. Hatfield testified that Crews became violent and began choking her, and that Dant then asked Crews to leave. Crews dragged Hatfield out of the apartment and into an alley. Crews got on top of her and punched her repeatedly in the face. Crews left the area when a truck appeared near the alley. Hatfield dialed 911 from a nearby service station. Dayton Police Officer Drew Wombold responded to her call. When Officer Wombold arrived, he observed that Hatfield was badly beaten.

Hatfield told Officer Wombold that her boyfriend, Gary Crews, had beaten her. She gave Wombold a description of Crews. Hatfield was taken to the hospital for her injuries

## II. The Course of Proceedings

{¶ 7} Crews was charged with Felonious Assault, in violation of R.C. 2903.11(A)(2). On the second day of his jury trial, in chambers, the State asked defense counsel to disclose a report made by Pat Tannreuther, the criminal investigator for the defense. The State argued that this report should be disclosed according to the "reciprocal discovery rule," set forth in Crim.R. 16.

{¶ 8} Tannreuther's report contained statements made to her by Isaac Black and Cindy Dant, both witnesses for the defendant. The report contained statements that would later turn out to be inconsistent with Black's and Dant's trial testimony. Black and Dant had not yet testified. The State had not seen the investigator's report. The State asked the trial court to exclude the entirety of Black's and Dant's testimony, or alternatively, to make Tannreuther available to the State both for interview, and for rebuttal testimony to impeach Black and Dant. Defense counsel argued that the report was work product, contained incriminating information, and should not be disclosed. The trial court overruled the State's motion to exclude Black's and Dant's testimony, but granted the State's request to have Tannreuther available for interview and rebuttal. The State did conduct an interview with Tannreuther and did elicit her testimony to rebut the testimony of Cindy Dant.

{¶ 9} At trial, Dant testified during direct examination that Crews was " * * * holding her down talking to her. It wasn't – he was just like holding her down a little bit. Trying to keep her to stay." During cross-examination, Dant testified regarding her statements to Tannreuther as follows:

> Q: Okay. I want to direct your attention to April the 16th. Isn't it true that you told the investigator, or her office, that you told Pat that you knew Gary Crews and Amanda were broken up?
>
> A: No. That's not true.

Q: You never told her that?

A: No. Because I never – I never said that.

* * *

Q: Okay. Same conversation with that investigator. Same date, April the 16th, 2011. Isn't it true that you told her that when you went into that back room and that they were arguing, this is the second time when you go in there, that your words to her was that you said that the Defendant was on top of her choking her out.

A: No, that's false.

Q: You're telling this jury that you never made that statement –

A: I never made that statement.

* * *

Q: I just want to know whether you made these statements or not. Same conversation, same investigator, April the – I believe it was the 16th. Isn't it true that you told that investigator that when Gary Crews came back in – this is after – that same night of the assault – he came back in and that you saw his hand and it had a cut on it. And when you asked him about it, he said that he had been in a fight.

A: No. That's not true.

* * *

Q: Okay. Same conversation, same investigator, same date, time, place. She was asking you about what he wore. And isn't it true that you told her that he always wore a green and white striped shirt with a green hooded sweatshirt and a black bubble coat?

A: No. He can't fit the sweatshirt with the bubble coat.

Q: So you never –

A: They don't fit together.

Q: – made that statement to her?

A: No.

Q: Okay. And isn't it true that also when she asked you initially what he was wearing that night, you said that same outfit that I just mentioned.

A: No.

Q: You never made that statement?

A: No. I don't recall that no.

{¶ 10} The State subsequently called Tannreuther as a rebuttal witness to impeach Cindy Dant, eliciting testimony regarding prior inconsistent statements made by Dant. Tannreuther testified regarding the inconsistent statements as follows:

Q: I want to direct your attention to April the 16th of 2011. Did you have an opportunity to interview Cindy Dant at that time regarding information she may have about this case?

A: Yes, I did.

Q: And, ma'am, isn't it true that when you talked to her on that date she told you that at the time of this incident she was aware that the Defendant and Amanda Crews had broken up?

A: That was her thought, yes.

Q: Okay. You also spoke to her about the argument in the apartment between Amanda and the Defendant. Is that right?

A: Yes.

Q: And isn't it true that she told you that when she went in that second time after hearing the arguing she saw the Defendant on top of Amanda and she told you that he was, quote, "choking her out."

A: She made that statement and then clarified it.

Q: But that was the statement she made to you first was –

A: Yes.

Q: – he was choking her out.

A: Yes.

Q: Okay. You also talked to Cindy about when the Defendant came back up to the apartment that same night after the incident had occurred. Is that right?

A: Yes.

Q: And isn't it true that she told you that she saw the Defendant's hand had a cut on it and when she asked him about that cut, he told her that night that he had been in a fight.

A: That's what she told me the first time, yes.

Q: Thank you. And isn't it also true that she told you initially that Gary Crews came back up and into that apartment before the police were ever even there.

A: Yes, I believe so.

Q: You also asked about the Defendant's clothing, didn't you, of her?

A: Yes, I did.

Q: Okay. And isn't it true that she told you that the Defendant always wore a green and white striped shirt, and a green hooded sweatshirt and a black bubble coat?

A: Yes, she did.

Q: And further isn't it true that when you asked her what he was wearing when he got kicked out of the apartment that night, she said, "Those same clothes" referring to the green and white striped shirt, green hooded sweatshirt and black bubble coat?

A: Yes, originally, yes.

{¶ 11} The jury found Crews guilty of Felonious Assault, the sole charge in the indictment. The trial court sentenced Crews to a term of imprisonment of five years.

{¶ 12} From his conviction and sentence, Crews appeals.

### III. Evidence Tending to Incriminate a Criminal Defendant, in the Form of Statements by Defense Witnesses to the Defense Investigator, Are Exempt from Discovery by Reason of Crim.R. 16(H)(3).

{¶ 13} Crews's First Assignment of Error is as follows:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ORDERED MR.CREWS'S TRIAL COUNSEL TO DISCLOSE TO THE STATE OF OHIO INCRIMINATING, CONFIDENTIAL WORK PRODUCT, WHICH WAS THEN USED TO SECURE MR. CREWS'S CONVICTION IN VIOLATION OF MR.CREWS'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS TEN AND SIXTEEN, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 14} At trial, during a discussion in chambers, the State complained that Crews's failure to provide the State with his investigator's report violated the reciprocal discovery required by Crim.R.16. The trial court agreed that the failure to provide the State with the report was a violation of Crim.R.16. The trial court permitted the State to interview the investigator, and also to call her in its case in rebuttal.

{¶ 15} Crim.R.16 states, in pertinent part:

(A) **Purpose, Scope and Reciprocity.** This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal.

Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures.

\* \* \*

**(H) Discovery: Right to Copy or Photograph.** If the defendant serves a written demand for discovery or any other pleading seeking disclosure of evidence on the prosecuting attorney, a reciprocal duty of disclosure by the defendant arises without further demand by the state. The defendant shall provide copies or photographs, or permit the prosecuting attorney to copy or photograph, the following items related to the particular case indictment, information or complaint, and which are material to the innocence or alibi of the defendant, or are intended for use by the defense as evidence at the trial, or were obtained from or belong to the victim, within the possession of, or reasonably available to the defendant, except as provided in division (J) of this rule:

\* \* \*

(3) Any evidence that tends to negate the guilt of the defendant, or is material to punishment, or tends to support an alibi. However*, nothing in this rule shall be construed to require the defendant to disclose information that would tend to incriminate that defendant*; [emphasis added]

(4) All investigative reports, except as provided in division (J) of this rule;

(5) Any written or recorded statement by a witness in the defendant's case-in-chief, or any witness that it reasonably anticipates calling as a witness in surrebuttal.

\* \* \*

**(J) Information Not subject to Disclosure.** The following items are not subject to disclosure under this rule:

(1) Materials subject to the work product protection. Work product includes, but is not limited to, reports, memoranda, or other internal documents made by the prosecuting attorney or defense counsel, or their agents in connection with the investigation or prosecution or defense of the case;

(2) Transcripts of grand jury testimony, other than transcripts of the testimony of a defendant or co-defendant. Such transcripts are governed by Crim. R. 6;

(3) Materials that by law are subject to privilege, or confidentiality, or are otherwise prohibited from disclosure.

**{¶ 16}** Crews argues that the trial court ignored the plain language of Crim.R.16. The language of Crim.R.16(H)(3) is broad: " * * * nothing in this *rule* shall be construed to require the defendant to disclose *information* that would tend to incriminate that defendant." The use of the word "rule," while placed within a subsection, indicates that this sentence applies to Crim.R.16 as a whole. If this language were meant to be applied only to a subsection, the sentence would not reference the "rule." See, for example, division (H)(4) of the Rule, which refers to "division (J) of this rule," where reference to less than all of Crim.R. 16 is intended. Consequently, the language regarding disclosure of incriminating information in (H)(3) applies to each section of Crim.R.16, including (A): "All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal." This section cannot be construed in a way that would require a defendant to disclose information that would tend to incriminate the defendant.

**{¶ 17}** Crim.R.16(H)(3) also uses the broadly inclusive word "information" in the phrase: " * * * *information* that would tend to incriminate that defendant." This demonstrates that the sentence applies to information, in any form, that has a tendency to incriminate the defendant. The statements of the witnesses Black and Dant fall within the broad concept of "information," as used in the Rule.

**{¶ 18}** Crim.R.16 does not require the same burdens of production on both the State and the defendant in a criminal proceeding. Subsection (H)(3) states, " * * * nothing in this *rule* shall be construed to require the defendant to disclose *information* that would tend to incriminate that defendant." This echoes the language both of the Fifth Amendment to the United States Constitution, " * * * nor shall be compelled in any criminal case to be a witness against himself," as well as the Ohio Constitution, "No person shall be compelled in any criminal case to be a witness against himself * * * ." Ohio Constitution, Article I, Section 10. Asymmetrically, the State has a constitutional duty to

produce evidence tending to exculpate a defendant. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

{¶ 19}   The defense investigator's report was "information" that "tended to incriminate" Crews. The defense investigator's report contained impeaching and incriminating statements of the witnesses Black and Dant. The State argues that it used the statements of Black and Dant contained in the report solely for impeachment purposes. But the wording of Crim.R. 16(H)(3) is not concerned with the use the State intends to make, or does make, of the information. If the information tends to incriminate, then no section of Crim.R.16 will be interpreted to require its disclosure. The disclosure of the report to the State, with the inconsistent statements of Black and Dant contained therein, resulted in the eliciting of those impeaching and incriminating statements during Crews's trial. The statements implicated Crews and indicated that he choked Hatfield. In Tannreuther's testimony as a rebuttal witness she indicated that despite Cindy Dant's testimony to the contrary, Dant reported seeing Crews on top of Hatfield, "choking her out." This testimony not only served to impeach Dant's testimony to the contrary; it also corroborated the testimony of the victim that Crews was choking her. The inconsistent statements made to the investigator also confirm Crews's whereabouts, his clothing, as well as the injury to his hand.

{¶ 20}   The admission of the incriminating information was prejudicial to Crews. Even if the statements of Black and Dant were only considered by the jury for impeachment purposes, as casting doubt on the credibility of Black's and Dant's testimony, the effect thereof was significantly prejudicial. Dant's testimony, in particular, directly contradicted the testimony of the victim that Crews choked her.

{¶ 21}   The State contends that the properly admitted evidence against Crews was already overwhelming, and that therefore the admission of the inconsistent and incriminating statements at issue was harmless. Specifically, the State argues that the State's evidence against Crews was overwhelming and that " * * * the testimony offered by Black and Dant * * * could not come close to creating

reasonable doubt in the State's case against Crews." Hatfield was the only witness who testified about Crews beating her in the alley area. While, as the State correctly points out, Dant did not witness what occurred in the alley, Dant did testify that Crews was not violent with Hatfield in the apartment beforehand. A reasonable jury might have credited Dant's testimony regarding Crews's non-violent behavior, and discredited Hatfield's testimony – not only her testimony that she was choked in the apartment, but also her testimony as to what happened in the alley, having found her not to be a credible witness. Similarly, Turner's testimony that she saw Crews that evening with a bloodied hand was impeached by the testimony of Tannreuther, the investigator. A reasonable jury could have discredited Turner's testimony on this point. The hostile text messages Hatfield received from Crews were evidence of a general altercation between the two, but the messages were not necessarily evidence that Crews himself beat Hatfield that night. The small blood stain found on Crews's sweatshirt was evidence that Hatfield was bleeding, but Hatfield also wore and kept the shirt following her release from the hospital. A reasonable jury may have concluded that the blood spot was indeed Hatfield's blood, but that the blood did not result from an altercation with Crews. Furthermore, the teeth and DNA evidence found at the alley scene provide evidence that Hatfield was beaten in that location, but this evidence does not necessarily indicate it was Crews who beat Hatfield in that location. The properly admitted evidence against Crews, while sufficient to sustain a conviction, was not overwhelming; a reasonable jury might nevertheless have found reasonable doubt.

{¶ 22} Crews also makes the argument that the witness statements contained in Tannreuther's report constitute work product, and therefore, under Crim.R. 16(J), are not discoverable. We disagree.

{¶ 23} The State points out that "statements made by witnesses or prospective witnesses to the defense attorney or his agents" were the subject of a specific exclusion, in Crim.R. 16(C)(2), from the discovery required by the previous version of the Rule, in addition to the work product exclusion set forth in division (C)(2) of the previous version of the Rule, which excluded "reports, memoranda, or other internal documents made by the defense attorney or his agents in connection with the investigation

or defense of the case * * * ." The State argues that the elimination, in the new version of Crim.R. 16, of the specific exclusion for witness statements implies that witness statements, as opposed to internal documents made by the defense attorney or his agents in connection with the defense of the litigation – i.e., work product – are no longer excluded from discovery under the Rule. We agree.

{¶ 24} The witness statements contained in Tannreuther's report are not generally excluded from discovery under Crim.R. 16(J). To the extent, however, that those witness statements include information tending to incriminate Crews, they are excluded, to that limited extent, from discovery under Crim.R. 16(H)(3). On remand, the trial court should review the witness statements contained in Tannreuther's report, and determine which portions thereof tend to incriminate Crews. Those portions are not discoverable under Crim.R. 16. The balance of the witness statements are discoverable.

{¶ 25} Obviously, it is too late now to prevent the State from discovering the entirety of the witness statements contained in Tannreuther's report. We agree with Crews, however, that the appropriate remedy, which will protect his rights under Crim.R. 16(H)(3), is to bar the State from using the incriminating portions of Tannreuther's report to impeach the defense witnesses, either in the cross-examination of those witnesses, or extrinsically, by using Tannreuther's report, or her testimony.

{¶ 26} Crews's First Assignment of Error is sustained.

**IV. Because We Find the Error in Ordering Disclosure of the Witnesses' Statements to the**

**Defense Investigator to Have Been Prejudicial,**

**We Need Not Determine Whether that Error Constituted Structural Error**

{¶ 27} Crews's Second Assignment of Error is as follows:

THE TRIAL COURT INJECTED STRUCTURAL ERROR INTO MR.CREWS'S TRIAL, IN VIOLATION OF MR.CREWS'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 28}   Crews asserts that the trial court's error in requiring his counsel to disclose the defense investigator's report constitutes, "actual or constructive denial of assistance of counsel and is legally presumed to result in prejudice." *Penson v. Ohio*, 488 U.S. 75, 88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). The significance of this argument that the error is structural is that it would relieve Crews of the burden of demonstrating that the error was prejudicial. But we find that prejudicial error is demonstrated on this record; the statements admitted were prejudicial, even considered solely as impeachment evidence. Therefore, the argument that the error is structural is moot.

{¶ 29}   Crew's Second Assignment of Error is overruled as moot.

## V.   The Trial Court Erred when it Failed to Notify Crews that he Could Be Required to Perform Community Service if he Should Fail to Pay Court Costs

{¶ 30}   Crews's Third Assignment of Error is as follows:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT IMPOSED COURT COSTS WITHOUT NOTIFYING MR. CREWS THAT HIS FAILURE TO PAY COURT COSTS MAY RESULT IN THE TRIAL COURT'S ORDERING HIM TO PERFORM COMMUNITY SERVICE.

{¶ 31}   A trial court is required by R.C. 2947.23(A)(1) to notify a defendant of the consequences for failure to pay court costs. The State concedes that the trial court erred when it failed to do so. We agree.

{¶ 32}   Crews's Third Assignment of Error is sustained.[1]

## VI.   Crews's Fourth Assignment of Error is Rendered Moot

{¶ 33}   Crews's Fourth Assignment of Error is as follows:

---

[1]We realize that we could elect to treat Crews's Third Assignment of Error as being rendered moot, in view of our reversal of his conviction, just as we have elected to treat his Fourth Assignment of Error as being rendered moot. In view of the State's concession of error, we elect not to do so.

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MR. CREWS'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶ 34}** Crews contends that his trial counsel was ineffective for having failed to request a waiver of court costs. Because we are reversing his conviction, this assignment of error is rendered moot. If Crews is again convicted, his counsel may then argue that court costs should be waived.

## VII.  Conclusion

**{¶ 35}** Crews's First and Third assignments of error having been sustained, and his Second and Fourth assignments of error having been rendered moot, the judgment of the trial court is Reversed, and this cause is Remanded for a new trial.

· · · · · · · · · · · ·

DONOVAN, J., concurs.

HALL, J., dissenting:

**{¶ 36}** I am not convinced that the portion of Crim. R. 16(H)(3), which excludes disclosure of incriminating information in the possession of the defense from reciprocal discovery, applies throughout all of Criminal Rule 16. Indeed, the (H)(3) wording, "* * *nothing *in this rule* * * * " would ordinarily be applicable to the entire rule being examined. But, the phrase is in such an odd location that I find it difficult to conclude that the phrase was intended to apply to the whole rule. If the intention was to make the phrase applicable to the whole rule, it would have been much more logical to put in section (A) describing the "Purpose, Scope and Reciprocity" of the entire rule. Or, it would have been even more logical to place the limiting phrase in section (J) "Information Not Subject to Disclosure," which is what the phrase actually describes. In my view, the phrase is in such an odd

location that it negates the notion that the use of the word "rule" must be given a plain or literal meaning. Research has not revealed legislative or committee history specifically related to whether the phrase was intended to apply to the whole rule or to subsection (H)(3) where it appears. The Staff Notes to the rule do not provide guidance. "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42 In the absence of any legislative or committee history for the intention of that part of the rule, I cannot say that the limiting phrase applies throughout the entire rule. That is not to say that the defense should be required to disclose information they discover which may be incriminating. The State of Ohio has the burden of proof and adequate resources to obtain evidence to do so. It is critical that our interpretation encourages full and adequate defense investigation of the defense case so that, in doing so, if incriminating information is found, the defense team is not automatically required to turn that over to the prosecution.

{¶ 37} Assuming that the (H)(3) limitation, that the defense does not have to disclose incriminating "information," *does* apply to the whole rule, I don't believe the choice of the term "information" was intended to trump disclosure of complete prior written or recorded statements of a witness who is called by the defense under section (H)(5) of the rule. It is inconceivable that the defense would call a witness whose only testimony would be incriminating. Thus, a defense witness will always have at least some testimony that is expected to assist the defense, even though that witness may also know incriminating facts. If that witness has made a prior statement to the defense, I believe that complete statement, including incriminating parts, is discoverable under Crim. R. (H)(4) & (5). In *United States v. Nobles*, the United States Supreme Court held that the defense could be ordered to turn over a defense investigator's notes if the defendant called the investigator as a witness. *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 14 (1975). Although the case dealt with other issues, I find the following concept instructive: "The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." *Id.* at 241. Likewise,

Crim. R. (H)(4) & (5)'s requirement that prior statements be disclosed should not permit presentation of a half-truth. After all, the defense can decide not to call a witness who might have more incriminating than exculpatory information. In that circumstance, a written or recorded statement of the witness under (H)(5) would not be discoverable because the disclosure of prior written or recorded statements does not apply to witnesses the defense chooses not to call. The question of whether or not a defense investigative report, containing incriminating information, other than a prior statement by a witness called by the defense, is discoverable under (H)(4) is not before us. This case is limited to the question of whether to disclose prior statements, of a defense called witness, that are in an investigative report, and contain incriminating statements.

{¶ 38} I recognize too that materials acquired by an attorney in case preparation are work product. But the question here is whether a specific item is subject to protection from disclosure. The cases and commentators discuss two types of work product.

> There are two types of work product, and the degree of protection afforded depends on which work product is applicable.

> Ordinary fact or "unprivileged fact" work product, such as witness statements and underlying facts, receives lesser protection.

> The other type of work product is "opinion work product," which reflects the attorney's mental impressions, opinions, conclusions, judgments, or legal theories. Because opinion work product concerns the mental processes of the attorney, not discoverable fact, opinion work product receives near absolute protection.

*State v. Hoop*, 134 Ohio App.3d 627, 642, 731 N.E.2d 1177, 1187-88 (12th Dist. 1999) (Citations omitted.)

{¶ 39} With respect to defense disclosure, new Crim. R. 16 appears to follow the same distinction. Given this demarcation, investigative reports, (H)(4), and statements of witnesses the defense intends to call, (H)(5), are subject to disclosure to the extent they do not contain internal

communication of impressions, conclusions , strategy or opinion. Also excluded from disclosure are privileged or confidential information which, I conclude, absolutely shields from disclosure any statements or information obtained from the defendant. The disclosures required by the Crim. R. 16 duty of reciprocal discovery effectively waives work product protection for those items that the rule subjects to disclosure. Under the rule, ordinary facts receive less protection, and are subject to some discovery. The protection for opinion work product is preserved. Under division (J) of the rule, protected work product is defined as "reports, memoranda, or other internal documents" and "materials * * *subject to privilege or confidentiality." Under division (H), intended exhibits, investigative reports (other than as defined as work product in section (J)), and statements of witnesses intended to be called must be disclosed. Thus, factual written or recorded statements made to a defense investigator by a witness whom the defense intends to call are required to be disclosed.

{¶ 40} For purposes of this case, the only discovery subject to our inquiry are ordinary facts consisting of prior statements of defense witnesses contained in a defense investigator's report.[2] In this case, at the very least, the defense was required to have disclosed those parts of the investigative reports which contained factual statements of the defense witnesses Black and Dant. Even assuming the majority's well reasoned view that the parts of the statements that incriminate the defendant did not need to be disclosed, the failure to disclose anything, in my view, was contrary to the rule. If the defense wanted to preserve their objection to disclosure of those parts of witness statements that may have incriminated the defendant, they should have either redacted that information, or asked the court for an in camera review, or both. Therefore, the ultimate question is not exactly what should have been

---

[2] To the extent that investigative reports may contain information other than direct statements of intended defense witnesses that could tend to incriminate a defendant involves fundamental issues about 1) attorney client privilege 2) privilege against self incrimination 3) the burden of proof on the State 4) work product and 5) effective assistance of counsel. See generally Right of Prosecution to Discovery of Case-Related Notes, Statements, and Reports-State Cases, 23 A.L.R. 4th 799, 809-13 (1983). Each of those weighty questions are beyond the scope of this opinion.

disclosed or not disclosed in the first instance. This case should turn on whether the trial court abused its discretion in fashioning a remedy for the discovery violation that had already occurred.

{¶ 41} The trial court has broad discretion in regulating discovery. *State v. Scudder*, 71 Ohio St.3d 263, 269, 643 N.E.2d 524 (1994). "The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987). When a discovery violation occurs, the trial court should impose the least severe sanction that is consistent with the purposes of the discovery rules. *Id.* A trial court's choice of remedy for a discovery violation should not be disturbed absent an abuse of discretion. *State v. Johnson*, 2d Dist. Montgomery No. 18642, 2001–Ohio–1543. An abuse of discretion exists when a ruling is unreasonable, arbitrary, or unconscionable. *State v. Amburgey*, 2d Dist. Greene No.2010 CA 14, 2011–Ohio–748, ¶ 116. Although in regulation of discovery the first sentence of section (L) of Crim. R. 16 limits the trial court to make orders "not inconsistent with this rule," I don't believe that general regulatory premise is applicable when a failure to comply with the rule is being addressed. Then the court "may make such other order as it deems just under the circumstances." *Id.*

{¶ 42} The record reveals that on the first day of trial the prosecution complained to the court that discoverable investigative reports had not been produced by the defense. The court ordered the defense to produce the reports, which was apparently done without limitation of content. (T. 428) There are at least three dated reports which "center around interviews conducted with Cindy and Isaac Dan[t]." (T. 430) On the morning of the second day of trial, the prosecution moved to exclude the testimony of the Dants indicating that the reports reveal "major inconsistencies in here with what the individuals told the investigator and what's been represented to the jury about the testimony that's going to come out." (T. 430) The state complained that because of the late production, they did not have the opportunity to interview the defense investigator. The court declined to exclude the testimony but instead ordered the investigator to be available for interview and for testimony if called by the state.

**{¶ 43}** In my view, under the circumstances, the court's order for production of the reports, without limitation as to content, was not an abuse of discretion. The discovery violation had occurred. The trial had already begun. Ordering prompt production of the reports without limitation of content was a reasonable resolution of the impasse. The order of production of the reports was not reversible error.

**{¶ 44}** Included in one of those reports was the prior statement by Cindy Dant that she saw Crews on top of the victim "choking her out." Accordingly, upon production of the reports, the state was now in possession of the critical information they used to impeach Dant with the testimony of investigator Tannreuther. I am however of the opinion that the trial court's order that Tannreuther be interviewed by the state over the lunch hour is beyond what was necessary or reasonable to resolve the discovery violation. Had the reports been produced when the defense decided to call Cindy and Isaac Dant, the likelihood that the defense investigator would have voluntarily submitted to an interview by the prosecutor is nil. Therefore, while the prosecutor may have been entitled to the reports of the statements, he was not hampered by the inability to personally interview Tannreuther. Ordering the opportunity for a personal interview of an agent for the opposition was, in my view, incorrect. Nonetheless, the cat was out of the bag so to speak. There is nothing in the record to suggest that the prosecution learned anything from the personal interview that was in addition to what was contained in what I have indicated were properly produced reports. The incorrect interview with Tannreuther did not result in prejudicial error.

**{¶ 45}** I would hold that the trial court did not abuse its discretion in the initial resolution of the discovery violation, and actions thereafter did not constitute prejudicial error. Therefore I would affirm the defendant's conviction.

· · · · · · · · · · · ·

Copies mailed to:

Mathias H. Heck

Kirsten A. Brandt
Kristopher A. Haines
Hon. Timothy N. O'Connell